MAY TERM, 1881, No. 151.                    MAY 16TH, 1881.

# The Bourgignon Building Association *versus* The Commonwealth.

1. The fourth section of the act to provide revenue by taxation, approved June 7th, 1879, subjects building associations to the payment of tax upon their capital stock.

2. The whole effect of the eighth section of the act of April 10th, 1879, was to exempt the associations named in it from taxes imposed by acts then in existence, and it did not surrender any right of the Commonwealth to impose taxes in the future.

3. An act of Assembly imposing a tax which is necessarily and certainly inconsistent with a preceding act exempting from taxation, repeals the former act, though both were passed at the same session.

4. A surrender in the least degree of the general power of taxation possessed by the Commonwealth cannot be implied.

5. A "building association" is not a "savings institution."

ERROR to the Court of Common Pleas of *Dauphin County.*

The facts appear from the following case stated, viz.: This is an appeal from a settlement made by the auditor-general and State treasurer against the Bourgignon Building Association for tax on capital stock, under act of June 7th, 1879, for year ending first Monday of November, A.D. 1879. The company is a building association incorporated in 1878, under the act of 29th April, 1874, with a nominal capital of $1,000,000, divided into shares of $200 each. At the time of its incorporation no capital had been paid in. Sixteen hundred and fifteen shares have been subscribed, payable one dollar per month on each share. Up to first Monday of November, 1879, $50,113.45 had been paid in. This money is loaned out to members on mortgage security. By the act of Assembly, approved April 10th, 1879, building associations are exempted from the tax claimed under the settlement made in this case. The act was formally accepted by appellants, and thereupon new letters patent were issued thereunder. The Commonwealth demand the tax in question under the provisions of the general revenue act of June 7th, 1879. The following questions are submitted to the Court:

*First.* Are the provisions of the act of April 10th, 1879, exempting the appellants from taxation, repealed by the general revenue act of June 7th, 1879?

*Second.* If repealed, does the act of June 7th, 1879, impose a tax upon the capital stock of building associations?

If the Court find both these propositions against the appellants, the judgment is to be entered for the Commonwealth for $73.03, otherwise judgment to be entered for the Bourgignon Building Association.

[The Bourgignon Building Association *v.* The Commonwealth.]

On the 13th of April, 1881, the Court below found in favor of the Commonwealth in the sum of $73.03, and filed the following opinion:

The facts are agreed upon, and appear in the case stated. Upon these, two questions are submitted to the Court.

"*First.* Are the provisions of the act of April 10th, 1879, exempting the appellants from taxation, repealed by the general revenue act of June 7th, 1879?"

This association brought itself within the protection of the act of April 10th, 1879, by filing the certificate of acceptance required by the ninth section of said act. This released it from taxation under existing laws. We do not, however, see anything in the letter or the spirit of this act to indicate a legislative intent to exempt these associations from any burden or taxation imposed by subsequent legislation, and certainly it has no contract feature which good faith is called upon to enforce and protect against the Commonwealth's right to tax. It does not strike me that the liability of the defendant to the tax-act of June 7th, 1879, depends upon the question of a repeal of a former act. The act of April 10th, 1879, may have served its purpose. It ended litigation. It took these associations out of the grasp of the act of 1868, and any other act then in force. But it did not cast its shadow into the future. We cannot entertain the argument that because of the eighth section of the act of April 10th, 1879, these associations are·not subject to a tax imposed by a subsequent general tax law. There is no attempt to exempt them from future taxation, or from any special tax that might be imposed. The language of the section is peculiar: " The bonus or tax due to the Commonwealth upon the capital stock of corporations, as provided for by act of 1st of May, 1868, or by any other act, shall not apply to or be due from mutual savings fund or building and loan associations," and therefore the necessity of a repeal of this act, either by implication or express words, in order to make effectual the subsequent tax, if there is one imposed on general terms, by a general tax law, is not apparent. This doctrine is not in conflict with Egypt Street, 2 Grant, 455, and other kindred cases, including Kilgore *v.* Commonwealth, 9 W. N. C., 184, relied upon by the defendants to show that implied repeals are not favored. The right to tax the capital of mutual savings fund or building and loan associations was not relinquished by the sovereign power of the legislature, and hence there is no right to be restored or law repealed before effect is given to a general tax law. There is no principle better established, and it requires no long array of cases to prove it, that no surrender

of the general power of taxation by any legislative act can be implied. It must be expressed : Erie Railway Co. v. Commonwealth, 16 P. F. S., 84.

We come now to consider,

"*Second.* If repealed, does the act of June 7th, 1879, impose a tax upon building associations ?"

The title of the act is, " To Provide Revenue by Taxation," and if we turn to the fourth section, under which the tax is imposed against the defendants, we find no appearance of an intention on the part of the law-making power to limit the scope of its grasp by any words of special or limited designation. Hence it is we read, " That every company or association whatever, now or hereafter incorporated by or under any law of this Commonwealth, or now or hereafter incorporated by any other State or Territory of the United States or foreign government, doing business in this Commonwealth, . . . . except foreign insurance companies, banks, and savings institutions," shall be subject to a tax. There is no escape for the defendants from the sweep of this section, unless it falls within the exception.

The ingenuity of the argument that " building associations," because " they may afford to the indigent an opportunity to save and profitably invest their savings," and because of the designation of other companies in connection with them in legislation as " savings fund and loan associations " belonging to the excepted class of " banks and savings institutions," falls upon the imagination and does not convince the understanding. The same ingenuity is taxed to demonstrate that building associations are not to be taxed as " banks and savings institutions," under the seventeenth section of the act.

" Banks and savings institutions " are a class of corporations having banking privileges, and have been long known to the law-making power, and the use of these terms are not misunderstood and should not be misconstrued. They were in use and the subject of legislation and taxation long before " building associations" demanded special exemption. Building associations have heretofore been exempt from the operation of tax impositions, but always by their technical names.

Again, " banks and savings institutions" were exempt from the operation of the fourth section of the act of May 1st, 1868, and in the proviso of the same section we find " building associations" exempt from liability " for any tax to the Commonwealth, when such companies make or declare no dividends." And further on, in the general tax act of April 24th, 1874, in section five, both classes are included

in the exemption, as follows, to wit: "Excepting also, banks and savings institutions, building associations, and foreign insurance companies." And also, in the third section of the act of March 20th, 1877, entitled "An Act to Equalize Taxation of Corporations and Companies," the same designation of corporations is used to save them from the tax imposed, "except building associations, banks, savings institutions, and foreign insurance companies." We cannot, therefore, arrive at any other conclusion than that "banks and savings institutions" have been uniformly applied to a different class of corporations than "building associations," and hence that the latter are not by any legislative understanding within the exception of the fourth section of the act of June 7th, 1879.

The Association filed exceptions to the finding of the Court :

*First.* Because the learned Court erred in deciding that the general revenue act of June 7th, 1879, repealed the provisions of the act of April 10th, 1879, exempting defendants from State taxation.

*Second.* Because the learned Court erred in deciding that the defendants were taxable upon the capital stock, under the general revenue act of June 7th, 1879.

*Third.* Because the learned Court erred in entering judgment for the Commonwealth on the case stated.

These exceptions were overruled April 23d, 1881, and judgment entered on the same day.

The Building Association took a writ of error, assigning as error the dismissal of the above exceptions.

*J. P. Klinges, M. H. Stutzbach* and *J. W. M. Newlin* for plaintiff in error.

As there was, at the time of the passage of the act of April 10th, 1879, no law in force imposing a tax upon the capital stock of these associations, there would be no purpose in the exemption clause of that act, unless it was to exempt them from all taxes to be imposed by acts then before the legislature, such as the revenue act of June, 1879. If it had been intended to include them in the last-mentioned act, they would have been named by their proper names. It is not possible that it could have been the intention of the legislature to enact a law imposing a tax on them when, almost in the same breath, it had declared they should not be subject to any law imposing such tax. The words "by any other act" mean subsequent general legislation. In the construction of a statute the intention is to be gathered from the necessity of the law, the previous defect, and the de-

[The Bourgignon Building Association v. The Commonwealth.]

signed remedy: Potter's Dwarris on Statutes (edition 1871), 184.

There was no occasion for this tax law as regards building associations, as the legislature two months before tacitly admitted.

The corporation in question can only be brought within this act by implication: Kilgore v. Commonwealth, 9 W. N. C., 184; Blanchard v. Sprague, 3 Sumner, 279.

To repeal a preceding statute by implication there must be a positive repugnancy: Street v. Commonwealth, 6 W. & S., 209; Pearce v. Bank, 33 Ala., 693; McCool v. Smith, 1 Black, 459; Wood v. United States, 16 Peters, 342; Harford v. United States, 8 Cranch, 109; Easton Bank v. Commonwealth, 10 Barr, 448; Hume v. Gossett, 43 Ill., 297.

A general law seldom repeals a special one: Dyer v. Covington, 4 Casey, 186; Brown v. Commissioners, 9 Harris, 37; Bounty Accounts, 20 Smith, 96.

Implied repeals are not favored: Erie v. Bootz, 22 Smith, 199; Shinn v. Commonwealth, 3 Grant's Cases, 205; Bowen v. Lease, 5 Hill, 221; Egypt Street, 2 Grant's Cases, 455.

A general law does not repeal a special law upon the same subject passed previously at same session, though seemingly repugnant: McFarland v. State Bank, 4 Ark., 410; Ottawa v. La Salle, 12 Ill., 339; Shinn v. Commonwealth, 3 Grant's Cases, 205; Williams v. Pritchard, 4 T. R., 2; United States v. Wigglesworth, 2 Story, 369.

Secondly, the fourth section of the act exempts " savings institutions." We claim that these are what building associations are. The common fund does not partake of the nature of stock. The loan is an anticipation by the member of his proportion of the fund. A member may withdraw his deposits on notice and become a creditor: Association v. Silverman, 4 Norris, 394. This precludes the possibility of assessment. In various statutes they are called *mutual saving funds*.

*Lyman D. Gilbert* and *Henry W. Palmer*, Attorney-General, for defendant in error.

In the fourth section of the act of May 1, 1868, the fifth section of the act of April 24th, 1874, and the third section of the act of March 20th, 1877, building associations are exempted from taxation, and are designated by their technical names. It will also be noticed that " banks and savings institutions " are regarded as distinct and different classes of corporations, and their exemption from taxation is not sufficient to excuse " building associations." The inference from legislation so explicit is that " banks and sav-

[The Bourgignon Building Association v. The Commonwealth.]

ings institutions" conveyed to the legislative mind a different meaning from that indicated by "building associations." The act of June 7th, 1879, for taxing purposes, used words wide enough to cover these associations, and then omitted to exclude them from their operation. There is but one conclusion, and that is that it was intended and designed to tax them. There was no unfairness, as foreign insurance companies are taxable, and even unincorporated banking and savings institutions are liable to a tax on net earnings.

As the act of June 7th, 1879, is inconsistent with that of April 10th, 1879, the earlier one is repealed. That they were passed at the same session of the legislature does not vary the rule of interpretation. Mere lapse of time does not affect the question.

A general tax law repeals all earlier special laws, unless they are specially excepted or are protected by contract: Iron City Bank v. Pittsburgh, 1 Wright, 340; Commonwealth v. Fayette Railroad, 5 P. F. Smith, 452; Union Improvement Company v. Commonwealth, 19 P. F. Smith, 140.

The opinion of the Court was delivered by GREEN, J., as follows:

The fourth section of the "Act to Provide Revenue by Taxation," approved June 7th, 1879, provides as follows: "That every company or association whatever, now or hereafter incorporated by or under any law of this Commonwealth, or now or hereafter incorporated by any other State or Territory of the United States or foreign government, and doing business in this Commonwealth, or having capital employed in this Commonwealth in the name of any other company, association or associations, person or persons, or in any other manner, except foreign insurance companies, banks, and savings institutions, shall be subject to and pay into the treasury of this Commonwealth, annually, a tax to be computed as follows," etc., etc. The facts of this case are brought before us by a case stated, in which it is agreed that the appellant "is a building association incorporated in 1878, under the act of 29th April, 1874, with a nominal capital of $1,000,000, divided into shares of $200 each." It is also agreed that "up to first Monday of November, 1879, $50,113.45 (of capital) had been paid in," and "this money is loaned out to members on mortgage security."

By the terms of the case stated, it appears, therefore, that the appellant is an association incorporated by a law of this Commonwealth, having a paid-up capital of $50,113.45 on the first Monday of November, 1879.

Apparently, the language of the revenue act of June 7th,

1879, subjects the appellant to the payment of a tax upon its capital stock. It is contended, however, that it is not liable to such tax upon two grounds: 1st, because building associations are exempted from the tax claimed by virtue of the act of April 10th, 1879, relating to mutual saving funds, building and loan associations; and 2d, because the act of June 7th, 1879, does not, when properly construed, impose a tax upon building associations. As it is undoubted that the act of April 10th, 1879, does exempt from taxation all building associations which, prior to and at that time, were subject to taxation by existing laws, the contentions of the parties to this litigation are presented by the case stated in the two following questions:

*First.* Are the provisions of the act of April 10th, 1879, exempting the appellants from taxation, repealed by the general revenue act of June 7th, 1879?

*Second.* If repealed, does the act of June 7th, 1879, impose a tax upon the capital stock of building associations?

The Court below having decided both these questions against the appellant, and sustained the settlement made by the auditor-general and State treasurer, the association has brought the case here for review by writ of error.

As to the first question. The language of the eighth section of the act of April 10th, 1879, is as follows: "The bonus or tax due to the Commonwealth upon the capital stock of corporations, as provided for by act of first of May, one thousand eight hundred and sixty-eight, or by any other act, shall not apply to or be due from mutual savings fund or building and loan associations." The effect of this provision undoubtedly was to exempt mutual savings fund and building and loan associations from the payment of the bonus or tax imposed upon them by the act of May 1st, 1868, or by any other act in force on April 10th, 1879, but that was its whole effect. Neither this section nor any other of the act of April 10th, 1879, assumed to surrender the right of the Commonwealth to impose any taxes she might choose to impose in the future. Not the slightest attempt is made to prohibit subsequent legislation in hostility with that of the act in question. Hence, it cannot be doubted that on any day after the 10th day of April, 1879, it was within the authority of the Commonwealth, acting through the law-making power, to reimpose any taxes which were removed by the legislation of that date. While it may be argued with some force that it would be inconsistent for the same legislature to remove a tax by one act, and re-establish it by another of subsequent date, yet that is but an argument of inconsistency at the best. It would be very proper to be

addressed to the legislative body as a reason for not passing the subsequent act, but it is absolutely of no force when addressed to a court which is bound to construe and enforce plain legislative words. Were the subject an open one, it would be enough to suggest that in the interval between the dates of the two acts, there may have occurred such a change in the financial affairs of the Commonwealth, or, in the opinion of the members of the legislative body respecting those affairs, as to induce them to reimpose taxes which they had by the earlier act removed. In view of these considerations it is evident that if the act of June 7th, 1879, imposes the tax in question, it is scarcely essential to the discussion to determine whether it is a repeal of the act of April 10th, preceding.

But if it were material the question is not difficult of solution. The eighteenth section of the act of June 7th, provides : "That this shall go into effect immediately, and that all laws or parts of laws inconsistent herewith, or which are hereby substantially re-enacted, be, and the same are hereby repealed." The eighth section of the act of April 10th is certainly and necessarily inconsistent with the fourth section of the act of June 7th, if the latter imposes a tax which the former removes, and hence the question is not one of implied but express repeal. In the case of the Commonwealth *v.* Fayette Co. R.R. Co., 5 P. F. S., on page 455, we said : " The act of 12th April, 1859, expressly repeals any existing law inconsistent with the provision as to taxation, and as the defendants are conceded to be within the words of the act, the limitation of taxation in their fifth section is clearly altered or repealed."

In the case of the Union Improvement Co. *v.* The Commonwealth, 19 P. F. S., 140, the company was, by the express provision of a supplement to its charter, exempted from taxation on its capital stock and dividends. Yet we held that it was liable to such tax under the general language of the act of May 1st, 1868, imposing tax upon all corporations without any words either of special or general repeal. The decision was put solely upon the ground that the act of 1868 subjected to taxation the capital stock of all corporations, and that, therefore, it must be intended to repeal even previous acts which gave special exemption. On page 143 it was said by WILLIAMS, J.: " It is true that this company was exempted from taxation by a special act, but this is wholly immaterial if it was the intention of the legislature to repeal the exemption by the act of 1868. If no such repeal was intended, why did the legislature declare that the stock of all companies whatever, except banks, savings institutions,

and foreign insurance companies should be subject to the tax imposed by the act? The exemption of these three classes of corporations from the operation of the act, conclusively shows that the legislature intended to include within its provisions all other corporations whatever, whether they had been previously exempted from taxation or not. If such was not their intention, why were they not included within the saving provisions of the act?" This language goes much farther than any requirement of the present case demands. In the case just cited the exemption was by a special act, which constituted part of the charter of the company, and of course it was limited to that particular corporation. In the case at bar, the plaintiff in error is one of a class, and claims the benefit of a general act exempting all building associations. The act of 1st May, 1868, contained no general repealing clause, but did contain a section (the sixteenth) which repealed a number of acts and parts of acts by precise description, but none of which embraced the exempting act of 11th April, 1862, which applied to the Union Improvement Company. Notwithstanding all this it was determined by this Court that the mere general language of the act of 1868, making the capital stock of all corporations liable to taxation, operated as a repeal of the special exemption in question. In the case of Erie Railway Co. v. Commonwealth, 16 P. F. S., on page 87, the present chief justice said : "There is no principle better established, and it requires no long array of cases to prove it, than that no surrender of the general power of taxation by any legislative act can be implied."

In the present case there is no language in any part of the act of April 10th, 1879, as we have heretofore shown, that purports to surrender in the least degree the general power of taxation possessed by the Commonwealth. Under the case last referred to, it is held that such surrender cannot be implied. We are therefore clearly of opinion that the act of June 7th, 1879, was a fresh and independent exercise of the taxing power, unrestrained by any previous surrender or limitation, so far as building associations are concerned, and also that it operated as an express repeal of the act of 10th April, 1879, exempting such associations from taxation.

The remaining question submitted by the case stated is : "Does the act of June 7th, 1879, impose a tax upon the capital stock of building associations?" The express language of the act includes " every company or association whatever " . . . . " except foreign insurance companies, banks, and savings institutions."

A building association is neither a foreign insurance com-

pany, nor a bank, and it cannot, without a manifest abuse of terms, be denominated a savings institution.  Technically, building associations and savings institutions have not a feature in common.  In the practical details of their operation they are totally dissimilar.  The latter were well known and in general use long before the former were ever heard of or had any authorized existence.

If there were the slightest doubt as to whether the legislature regarded *savings institutions* and *building associations* as the same, it is instantly dispelled by observing the manner in which they are treated in various acts.  The act of 1st May, 1868, imposed taxation upon " all companies whatever," " except banks, and savings institutions, and foreign insurance companies," but yet provided in the same section, " that building associations, plank road, or turnpike companies, shall not be liable for any tax to the Commonwealth, when such companies make or declare no dividends."  If " building associations " were already exempt from the operation of the fourth section because they were " savings institutions," the proviso clause of that section, which exempts them when they declare no dividends, would be an absurdity.

In the fifth section of the tax act of 24th April, 1874, occurs the following clause: " And excepting also banks, and *savings institutions, building associations,* and foreign insurance companies."  If the two classes were the same, of course they would not receive separate designations.  Precisely the same independent designation of these two classes of corporations occurs in the excepting clause of section three of the general tax law of 20th March, 1877.  When the act of 7th June, 1879, was passed, all companies or associations whatever were subjected to the tax " except foreign insurance companies, banks, and savings institutions," and the conclusion is irresistible that inasmuch as in the previous acts upon the same subject, building associations were included in the excepting clauses by express mention, they were omitted from the excepting clause of this act because it was so intended.  It is unnecessary to pursue the discussion.  We are of opinion that the learned Court below were correct in their conclusions upon both questions submitted, and, therefore,

The judgment is affirmed.