## Metropolitan Edison Company v. Berks County

*Harold J. Ryan* and *James Rick, 3rd,* for plaintiff.
*Dawson H. Muth,* county solicitor, for defendant.

MAYS, P. J., January 28, 1947.—This is a suit in assumpsit brought by the Metropolitan Edison Company to recover for the lighting of the Bingaman Street Bridge.

Plaintiff's statement of claim sets forth that on July 12, 1944, the parties entered into a contract whereby the Metropolitan Edison Company agreed to light the bridge known as the Bingaman Street Bridge crossing the Schuylkill River, located in the City of Reading, Berks County, Pa., with electricity from underground distribution facilities by means of incandescent lamps, for a period of years, to wit, from July 1, 1944, to July 1, 1954, and defendant agreed to pay for said lighting at the rate of $159.88 per month; that in accordance with the terms of the contract plaintiff furnished the lighting as required and defendant paid

for same at the stipulated monthly rates from July 1, 1944, up to and including July 31, 1945; that under date of July 10, 1945, defendant notified plaintiff, in writing, that it would discontinue the said lighting contract. Since August 1, 1945, to the date of the filing of the statement, plaintiff has continued the lighting of the bridge, and defendant has not paid for said lighting services.

Defendant contends that there is no further liability under the contract since the bridge is no longer a county bridge, but is one that was taken over by the Department of Highways pursuant to the Act of May 23, 1945, P. L. 867. In accordance with the Act of April 22, 1874, P. L. 109, by stipulation dated October 16, 1946, and signed by the attorneys for the parties, trial by jury was dispensed with.

### Findings of fact

1. That plaintiff, Metropolitan Edison Company, is a public service corporation organized and existing under the laws of the Commonwealth of Pennsylvania and engaged in supplying electricity for light, heat and power to the public, serving an area which includes, inter alia, the City of Reading, Berks County, Pa.

2. That defendant, the County of Berks, is a municipal corporation of the Commonwealth of Pennsylvania.

3. That on July 11, 1944, by resolution duly passed, the County Commissioners of Berks County were authorized and empowered to enter into and execute a contract with Metropolitan Edison Company for the lighting of the Bingaman Street Bridge with electricity for a period of 10 years from July 1, 1944.

4. That the Bingaman Street Bridge is wholly within the limits of the City of Reading, a third class city, located in the County of Berks, Commonwealth of Pennsylvania.

5. That on July 12, 1944, the County of Berks, by its commissioners, entered into and executed a contract with Metropolitan Edison Company for the lighting of the Bingaman Street Bridge with electricity, for a period of 10 years, from July 1, 1944, agreeing to pay Metropolitan Edison Company for said lighting the sum of $159.88 per month less certain deduction not herein involved.

6. That bills for the lighting furnished under said contract become due and payable by said county on the 10th day of the month succeeding that in which the service is rendered.

7. That service was rendered by Metropolitan Edison Company under said contract continuously from July 1, 1944, to June 30, 1946, and since.

8. That the County of Berks paid to Metropolitan Edison Company for said service at the contract rate from July 1, 1944, to July 31, 1945.

9. That the County of Berks has not paid to Metropolitan Edison Company for said service any amount for the period from August 1, 1945, to June 30, 1946, and since.

10. That the contract rate per month for said service rendered by Metropolitan Edison Company to the County of Berks under said contract is in accordance with Metropolitan Edison Company's duly filed service classification OSL which became effective after September 30, 1943, and is still in full force and effect.

11. That at the time of the execution of the contract the Bingaman Street Bridge was a county bridge.

12. That said Bingaman Street Bridge after July 1, 1945, ceased to be a county bridge.

13. On July 1, 1945, the Department of Highways of the Commonwealth of Pennsylvania took over said bridge and has since laid claim to the rentals formerly paid to the County of Berks, and has been collecting them since that date.

*Discussion*

Article IX, sec. 722 of The General County Law of May 2, 1929, P. L. 1278, 16 PS §722, provided:

"Whenever considered necessary for the safety and convenience of the traveling public, the county commissioners of any county within which a county bridge is erected . . . may supply and equip any county bridge within their respective counties with lights of any kind and character as they shall deem necessary. . . . To carry out the provisions of this act, the county commissioners . . . are authorized to contract with any . . . private corporation, for the purpose of supplying the necessary light . . ."

The succeeding section 723, provides as follows:

"The county commissioners shall repair all county bridges heretofore erected, or that may be hereafter erected by the county, where no other provision is made for the maintenance thereof, and shall pay the expenses of such repairs out of the county treasury."

The Act of June 22, 1931, P. L. 720, 36 PS et seq., is an act providing for the taking over by the Commonwealth under certain terms, conditions and limitations of certain streets, inter alia, in cities of the third class, as State highways. Under section 2 of the said act certain streets in the City of Reading are specifically taken over as State highways, including the streets crossing the Bingaman Street Bridge.

Section 4 (c) of said Act of 1931, as originally passed, provided that the act is not intended and shall not be construed to place upon the Commonwealth "any obligation to maintain, construct or reconstruct any structure of any kind or character whatsoever situate upon or forming part of any city street, or section thereof." The Superior Court in Department of Highways v. Pennsylvania Public Utility Commission, 141 Pa. Superior Ct. 376 (1940), at p. 384, construed said section 4 (c) in reference to bridges located on said highways, as follows:

"The legislature was careful to provide in schedule (c) that the responsibility for maintenance, construction, or reconstruction of bridges generally should not be placed on the Commonwealth by the mere taking over of the roads and such responsibility should remain as it was . . .".

The plaintiff has correctly stated: "thus stood the law on July 12, 1944, when the contracts at bar were executed." From the above it is clear that section 722 of The General County Law of 1929, which was then in full force and effect, gave defendant the requisite authority to make said contracts.

The Act of 1931, supra, in no way changed or altered this situation. It follows that said two contracts between plaintiff and defendant were valid and binding when made. Defendant, however, makes the claim the Act of 1931, supra, was amended by the Act of May 23, 1945, P. L. 867, sec. 4(c) which reads as follows:

"But all bridges and viaducts on such State highways in cities of the . . . third class, which are being maintained by the city or county, shall be taken over by the Department of Highways upon the effective date of this amendment, and shall, thereafter, be constructed, reconstructed, repaired and maintained at the sole expense of the Commonwealth."

The effective date of this amendatory act was July 1, 1945.

The bridge in question is located upon State highway routes adopted under the provisions of the Act of 1931, supra, which act embraced the route over the Penn Street Bridge and the Bingaman Street Bridge, in the City of Reading, and the Schuylkill Avenue Bridge, having been included and taken over by the Commonwealth by section 1 of the Act of 1937, P. L. 2320. If these acts were amended by the Act of 1945, which became effective July 1, 1945, and the amendment has not been repealed, then it is certain that the bridges in controversy are no longer county bridges.

Plaintiff, however, makes the claim that the Act of May 23, 1945, P. L. 867, supra, was repealed by the Act of June 1, 1945, P. L. 1242, 36 PS §§670-101 et seq. Section 1101, 36 PS §§670-1101, of this latter act specifically repeals sections 4 to 13 inclusive of the Act of 1931, P. L. 720, but no mention was made of repealing its amendatory Act of 1945, P. L. 867.

I cannot agree with plaintiff that the Act of 1945, known as the Highway Act, repealed the earlier Act of 1945, and that the earlier Act of 1945 falls. Section 72 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §572, provides:

"Whenever any existing law, incorporated into and repealed by a code, is also amended by other legislation enacted at the same session of the Legislature, such separate amendment shall be construed to be in force, notwithstanding the repeal by the code of the law it amends, and such amendment shall be construed to prevail over the corresponding provisions of the code."

The Highway Act of 1945, supra, definitely and specifically repeals section 4, which provided that the Act of 1931 was not intended and shall not be construed to place upon the Commonwealth "any obligation to maintain, construct or reconstruct any structure of any kind or character whatsoever situate upon or forming part of any city street, or section thereof".

The earlier Act of 1945 was amendatory and definitely provided that the Department of Highways shall construct, reconstruct, repair and maintain, at the sole expense of the Commonwealth, bridges and viaducts in third class cities.

Manifestly, both of these acts accomplished the same purpose.

The earlier Act of 1945 definitely provides that the bridge shall no longer be a county bridge but shall be maintained by the Department of Highways. Part of section 702 of the State Highway Law, supra, provides:

"If any agreement or contract has heretofore been made or entered into between any county and any public service company for occupancy of any such bridge, such agreement or contract shall remain in force and the State shall take over and succeed to all the rights of the county under such agreement or contract. Where such contract provides for the payment of a certain amount for such occupancy, payment shall be made by the company to the Commonwealth; and if payment has already been made to the county in full for any specific length of time extending beyond the date of approval of this act, the proportionate amount of the payment represented thereby shall be paid by the county to the Commonwealth, and the department shall not be authorized to assume the obligation for construction or maintenance of such bridge until and unless such payment is made by the county."

I have found as a fact that the State has availed itself of this provision, and has not only demanded the moneys from the occupants of the bridge, but has actually received payments as they fell due.

These two acts are not inconsistent, but they are in pari materia, dealing with the same subject, and they should be construed with reference to each other. Section 62 of the Statutory Construction Act, supra, provides:

"Laws or parts of laws are in pari materia when they relate to the same persons or things or to the same class of persons or things. Laws in pari materia shall be construed together, if possible, as one law."

This is especially true as to two acts passed at the same session: Bourguignon Building Association v. Commonwealth, 98 Pa. 54, 46 PS §562 note b, p. 454, and other cases cited.

Plaintiff makes the further contention that even if Act No. 355, supra, is construed to place the responsibility for lighting the said bridge on one other than the County of Berks, it cannot be held as relieving de-

fendant of its obligation under its contract because it would be in violation of article I, sec. 17, of the Pennsylvania Constitution, which reads: ". . . no . . . law impairing the obligation of contracts . . . shall be passed," and in violation of article I, sec. 10, of the Constitution of the United States which reads: "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts . . .".

The right on the part of the County of Berks to enter into this contract was a power vested in it by the legislature. Such a power the County of Berks cannot bargain away. 1 Dillon on Municipal Corporations (5th ed.) 463, §245 (97).

As a general proposition bridges are treated as portions of the highway and are to be maintained by the same persons as the highways. In Pennsylvania the duty of maintaining highways is statutory. In 1929 the legislature said a county bridge shall be lighted by the county. In 1945 the legislature said that the bridge in question here is no longer a county bridge and, therefore, the County of Berks has no right to contract with regard to this bridge. All rights thereto have passed over to the Commonwealth.

Defendant is a municipal corporation, created by law, for certain local, governmental purposes, authorized to exercise such powers only as were conferred upon it by law. Prior to the passage of the Act of 1929, supra, it had no power to cause any of the bridges to be lighted with electricity, or in any other way. By that act such power was conferred upon defendant. For what term? The learned counsel for plaintiff insists for the term of 10 years at least, for which time the contract was entered into by plaintiff with the board of county commissioners, and that during this time the legislature had no power to relieve the County of Berks from the expense of lighting the bridge embraced in the contract. If the board of

county commissioners could deprive the legislature of its power for the remaining years of this contract, it might for 25 or more years, by contracting for that period. The power so conferred by the Act of 1929 was subject to modificaton or repeal by subsequent legislation, and the county commissioners could not, by any contract, prevent or at all control the action of the legislature in this respect. It follows that the County of Berks could only contract for a supply of electricity for lighting this bridge for such time as the power to so light it was conferred upon it by law.

In Appalachian Electric Power Co. v. County Court of Kanawha County, 116 W. Va. 306, 180 S. E. 264, a case where the facts are quite similar to the ones which appear in the instant case, it was held that a statute transferring to the State road commission all county district roads and requiring county court to relinquish its authority over such roads did not violate the obligation of contracts by relieving county court from further liability under contract whereby county court agreed to purchase of electric company, during period of 10 years, electricity to light part of county district road.

This conclusion, I submit, is supported by what is set forth in A. L. I. Restatement of Contracts, §458, which reads as follows:

"A contractual duty or a duty to make compensation is discharged, in the absence of circumstances showing either a contrary intention or contributing fault on the part of the person subject to the duty, where performance is subsequently prevented or prohibited (a) by the Constitution or a statute of the United States, or of any one of the United States whose law determines the validity and effect of the contract, or by a municipal regulation enacted with constitutional or statutory authority of such a State."

See also 12 Am. Jur. 54, cited in Zeuger Milk Co. v. Pittsburgh School District, 334 Pa. 277, 280.

In coming to this conclusion I have not overlooked what was the attitude of plaintiff corporation, which was indeed very fine under the circumstances. It could have immediately cut off the current with the result that the bridge would have been without lights. This would not be a desired result, and surely not in the public interest. However, if I have correctly stated the law on the subject, I cannot be led away from what I think is a logical conclusion because of an anticipated undesirable result.

It is sufficient to say that the legislature stated definitely and positively that the bridges taken over in cities of the third class which were maintained by the city or county should thereafter be constructed, reconstructed, repaired and maintained at the sole expense of the Commonwealth.

### Conclusions of law

1. That the contract dated July 12, 1944, between the County of Berks and Metropolitan Edison Company for the lighting with electricity of the Bingaman Street Bridge, located wholly in the City of Reading, a third class city situate in Berks County, Pa., for a period of 10 years from July 1, 1944, upon the terms and conditions therein contained was valid and binding upon the parties thereto when made.

2. That the Acts of May 23, 1945, P. L. 867, and the Act of June 1, 1945, P. L. 1242, relieved the County of Berks from the obligation under said contract.

3. That on and after July 1, 1945, said contract was not binding upon the County of Berks.

4. Plaintiff is not entitled to recover from defendant the sum claimed, or any part thereof.

And now, to wit, January 28, 1947, the prothonotary is directed to enter a decree nisi in accordance with the foregoing decision and forthwith to give notice of the same to the parties or counsel of record, sec. reg.