Purolator Courier Corporation, Brink's Inc. and Protective Motor Service Company, Appellants, v. Commonwealth of Pennsylvania, Pennsylvania Public Utility Cmmission, Appellee, and James C. Wetherill t/d/b/a Hatboro Delivery Service, Intervening Appellee.

Argued February 6, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*James W. Patterson,* with him, of counsel, *Morgan, Lewis & Bockius,* for appellants.

*Thomas C. Dick,* Assistant Counsel, with him *Edward Munce,* Acting Counsel, for appellee.

*Edward D. Foy, Jr.,* with him *Liederbach, Eimer, Foy & Hahn,* for intervening appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, May 17, 1974:

The issue raised by a motion to quash the instant appeal, though narrow, is one of first impression and

affects virtually every appeal to this Court from an adjudication of a state administrative agency pursuant to Section 403 of the Appellate Court Jurisdiction Act of 1970 (ACJA), Act of July 31, 1970, P. L. 673, *as amended,* 17 P.S. §211.403, which confers jurisdiction in this Court over such appeals.

Section 502, ACJA, 17 P.S. §211.502, dealing generally with the time for appeal, provides, with two exceptions not here relevant, that an appeal under the Act from any order shall be filed "within thirty days of its *entry.*"

A host of statutes, including the Public Utility Law, Act of May 28, 1937, P. L. 1053, *as amended,* 66 P.S. §1101 et seq., here involved, speaking on the subject of judicial review of state administrative adjudications, contain provisions inconsistent with Section 502, ACJA, as to the event from which the time limitation for appeal is measured. Section 1101 of the Public Utility Law, 66 P.S. §1431, requires such appeals to be taken within thirty days "after the service of any order by the commission," thus clearly in conflict with Section 502, ACJA. A multitude of other statutes governing particular state administrative agencies variously prescribe the event from which the time limitation for appeal is to be computed as "service of notice" of the order, "mailing of decision" and similar phrases, all equally clear as being inconsistent with Section 502, ACJA.

Given inconsistent provisions as to the event from which the time limitation for an appeal is to be measured, which provision shall prevail—Section 502, ACJA, enacted subsequent to Section 1101 of the Public Utility Law, or Section 1101?

There is no factual dispute in the instant case that the appeal was timely taken if measured from the date of service of the order of the Commission on appel-

lants, and untimely taken if measured from the entry of the order.

Appellants, in strenuously opposing the motion to quash filed by the intervening appellee in this appeal, correctly point out that Section 1101 of the Public Utility Law was not *specifically* repealed by the provisions of the ACJA. Absent a specific repeal, appellants argue that the legislature intended the preservation of the provisions of Section 1101 relating to the event from which the time for appeal is to be measured, this legislative intent being demonstrated by its specific action in providing that the Commonwealth Court, not the Superior Court, should have jurisdiction of appeals as disclosed by the amendatory Act of June 3, 1971, P. L. 118, which extensively amended the ACJA and has been commonly referred to as a housekeeping act.

As pertinent here, the Act of June 3, 1971, P. L. 118, amended subsection (a) of Section 509, ACJA, 17 P.S. §211.509,—the absolute repealer section of the ACJA— by adding a new clause which, in pertinent part, reads: "(115) . . . as much of the first sentence as reads as follows: 'to the Superior Court' and the second and last sentences of subsection (a) and as much of the first sentence as reads as follows: 'to the Superior Court' of subsection (b) of section 1101 . . . act of May 28, 1937 (P. L. 1053), known as the 'Public Utility Law.' "

Contrary to appellants' contention, we can find no legislative intent from this enactment that the provisions of Section 1101 of the Public Utility Law as to the event from which the time for appeal is to be measured are preserved either on the theory that it constitutes a reenactment of Section 1101 or an amendment to the entire Section 1101 subsequent to the conflicting provisions of Section 502, ACJA. As it clearly provides, it repeals inconsistent provisions of the Public Utility Law with provisions of the ACJA as to which

court—the Superior Court or the Commonwealth Court —enjoys jurisdiction over appeals from commission orders. It is only to that subject the above provisions of the Act of June 3, 1971, P. L. 118, speak.

Rather, the issue in question must be resolved by consideration of other provisions of the ACJA from which we must conclude that the provisions of Section 1101 of the Pubilc Utility Law relating to the event from which the time for appeal is to be computed or measured, being in conflict with Section 502, ACJA, have been repealed. In our opinion, this conclusion is inescapable; by application of fundamental principles of statutory construction, Section 509 of the ACJA as originally enacted, after repealing absolutely enumerated sections of particular statutes (vastly expanded in the so-called housekeeping Act of June 3, 1971, P. L. 118), contains in subsection (f) a general repealer which provides that "all other acts and parts of acts are hereby repealed in so far as inconsistent with this act." It is well settled that these are words of express repeal of all previous inconsistent legislation. *See Commonwealth ex rel. A. C. Braughler v. John Weir,* 165 Pa. 284, 30 A. 835 (1895) and *Bourguignon Building Association v. Commonwealth,* 98 Pa. 54, 1 Penny. 193 (1881).

That the two statutory provisions in issue as to the event from which the time for appeal is to be measured are conflicting cannot be gainsaid. That the general repealer contained in Section 509(f) of the ACJA controls the result we have reached is well settled. *Newbold v. Pennock,* 154 Pa. 591, 26 A. 606 (1893); *Commonwealth ex rel., Appellant v. Keeper of County Prison,* 49 Pa. Superior Ct. 647 (1912).

Although not on point as to the issue here raised, other issues involving interpretation of the provisions of the ACJA in conflict with other statutory law either predating or postdating enactment of the ACJA have

had our attention. *See Pottsgrove School District v. Pennsylvania Labor Relations Board,* No. 10 Transfer Docket 1972, decided March 10, 1972, Pa. Commonwealth Ct., *aff'd,* 451 Pa. 404, 304 A. 2d 491 (1973), (regarding which tribunals in Pennsylvania enjoy jurisdiction to entertain appeals from decisions of the Pennsylvania Labor Relations Board regarding municipal and county employees under the Public Employe Relations Act, Act of July 23, 1970, P. L. 563, §1502, *as amended,* 43 P.S. §1101.1502) ; *see also Hartman v. Commonwealth,* 6 Pa. Commonwealth Ct. 409, 295 A. 2d 850 (1972), (regarding which tribunals in Pennsylvania enjoy jurisdiction to entertain appeals de novo from decisions of the Department of Transportation regarding suspension of motor vehicle inspection station licenses). However, *cf. Pittsburgh v. P.U. C. and Duquesne Light Company,* 3 Pa. Commonwealth Ct. 546, 284 A. 2d 808 (1971), (holding that other statutory procedures incident to appeal set forth in Article XI of the Public Utility Law, Act of May 28, 1937, P. L. 1053, *as amended,* 66 P.S. §1101 et seq., are not repealed by enactment of the ACJA).

We reach this conclusion reluctantly not because of doubt as to the conclusion here reached but because it ousts our jurisdiction to hear this appeal on its merits. *Luckenbach v. Luckenbach,* 443 Pa. 417, 281 A. 2d 169 (1971).

Finally, we note a number of legislative enactments adopted subsequent to the adoption of the ACJA and subsequent amendments and reenactments of statutes predating the ACJA. Thus, decision in this case should not be assumed as controlling similar issues involving different statutory histories. Certainty does not exist in this field and until it does the practitioner should proceed with careful determinations of the procedure to be employed in timely taking and perfecting such an appeal.

## ORDER

Now, May 17, 1974, intervening appellee's motion to quash the above appeal is hereby granted. The appeal is quashed as having been untimely taken.

---

DISSENTING OPINION BY JUDGE KRAMER:

I respectfully dissent. While I am in agreement with the majority opinion insofar as it applies to the analysis of the statutory law, I must dissent because I consider the statutory provision governing the appeal period to be unconstitutional.

This writer has noticed in other appeals from the Pennsylvania Public Utility Commission (PUC) that the PUC dates its adjudication on one date, dockets, enters,[1] or files it on another date, and several days later finally sends same to the parties. (*See* record in *Morgan Drive Away, Inc. v. Commonwealth of Pennsylvania, Pennsylvania Public Utility Commission,* 12 Pa. Commonwealth Ct. 5, 315 A. 2d 889 (1974). Under these circumstances, when does a citizen's appeal period start to run? When is entry? According to the majority and the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, as amended, 17 P.S. §211.101 et seq., time runs from the date of "entry," period, and no notice need ever be timely given. It doesn't take much imagination to realize that any court or administrative agency can thwart the legislative intent to guarantee a citizen's constitutional right to an appeal (Art. V, Section 9 of the Pennsylvania Constitution of 1968) by the mere delay of sending notice of its adjudication. This problem is not merely academic; it is real and this case proves its existence.

In yet another dissent, I set forth my reasons why any service of notice, or any running of time within

---

[1] Apparently there is no "Entry" docket available to the public to check on the entry date.

which to take an appeal, which results in different or unequal time periods for persons within the same class is in violation of the Equal Protection and Due Process clauses of the United States Constitution. *See Commonwealth of Pennsylvania, Department of Revenue v. Niemeyer Oldsmobile, Inc.,* 12 Pa. Commonwealth Ct. 388, 394, 316 A. 2d 152, 155 (1974). Everything I said there is equally applicable here.

As I stated in *Niemeyer, supra,* I would hold that the appeal time period starts to run only after service or receipt of notice of the existence of the adjudication. If that requires the use of proof of service, such as affidavits or registered mail return receipt cards, so be it. The Constitution requires it.

The date of mailing of notice should not control the number of days a citizen has to appeal an adverse adjudication, because a citizen who lives in the same city as the sender may receive his notice on the same or next day, but a citizen living hundreds of miles away will receive his notice much later. The Constitution does not permit such unequal treatment.

Delay, after "entry" by the adjudicator, likewise should not reduce the appeal period. The Legislature intends each citizen to get his full statutory 30, 60 or whatever, days to take an appeal. Any reduction caused by the governmental agency should not be utilized to reduce the statutory appeal time period intended.

I would deny the motion to quash the appeal.